Good morning, and may it please the Court. Immediately after her shower, a visibly terrified Melissa Balsewicz told Sgt. John Pawlyk that a prisoner had just threatened to, quote, beat the F out of her. In response, Pawlyk did absolutely nothing. Two days later, the prisoner made good on the threat, punching Balsewicz in the face and knocking her over. A reasonable juror could find Pawlyk liable for deliberate indifference because he knew of and disregarded a specific, credible, and imminent risk to Balsewicz's safety. And because it is clearly established that doing nothing in response to such a risk is deliberate indifference, Pawlyk is not entitled to qualified immunity. Balsewicz's report of the threat to Pawlyk met all of the elements this Court has held sufficient to support an inference of actual knowledge and gave us, which is McLaughlin. A reasonable juror could find that Balsewicz relayed a specific and credible risk of harm to Pawlyk. So could I ask you, Ms. Lobacheva, let me quickly, I think there are a couple of central points here. One of them is whether on this record one could draw the inference that Rivers' threat extends beyond the period of time when everybody's in the shower. Because in his second opinion, the district court seemed to understand it that way. And the other point that I'm at least very interested in having you address is the posture here of the qualified immunity claim. Obviously, we take the facts in the light most favorable to Ms. Balsewicz. But Sergeant Pawlyk argues that even taking the facts that way, this is a vague area and he should not be deprived of qualified immunity. Yes, Your Honor. To address the first point about the threat beyond the shower, a reasonable juror could find that Pawlyk knew of an imminent danger that was not limited to the shower. Balsewicz told Pawlyk that Rivers threatened her in no uncertain terms. She reported it immediately after it happened, one witness even describing that she appeared visibly fearful while doing so. And of course, she's out of the shower by that time. So it's not like she's saying a bad thing happened, but now it's over with. That's correct, Your Honor. She and also in that conversation, she repeatedly asked Pawlyk to report her concerns of safety. And she told another officer to remind Pawlyk to do so later in the day, showing that she was still worried. And Pawlyk has not submitted any sworn testimony in this case to show that it was impossible or improbable for Rivers to carry out his threat or that he failed to appreciate that the threat was imminent. And in the absence of such testimony, a reasonable juror could especially find knowledge of an imminent threat here because Balsewicz and Rivers live in the same housing unit and are allowed to shower together. And the fact is, the attack only happened only two days after the threat. So the threat was actually imminent in reality. So there's nothing to indicate that no reasonable juror could find that the threat was ongoing here. To address your point about qualified immunity, in the decades since the Supreme Court decided Farmer v. Brennan, it has become clearly established in the circuit that an officer who knows of and disregards a substantial risk of harm is deliberately indifferent. And in Horshaw, this court held that Farmer clearly establishes the governing rules. And when we look to how this court has interpreted Farmer in Davis v. McLaughlin, this court held that when a prisoner testified that he informed an official of the identity of the person who threatened him, the nature of the threat, and enough context to render that threat plausible, and the official does nothing, that is deliberate indifference. And this court in Stonby-Lemon held that this principle is clearly established. And it's important to note here that Pollack did not take any minimal steps to find out more about the threat. In fact, he did not take any steps at all. In Farmer, the Supreme Court held that an official cannot stick his head in the sand in response to a risk that he strongly suspects exists, and then claims he did not know about it. So in other words, we have to, I mean, I think this is critical, we have to take the facts as though, you know, at the correct granular level that cases such as Anderson v. Creighton require, that Balcewicz gave a very detailed account to Sergeant Pollack of who was going to attack her, you know, what caused her to think that this attack was coming, namely his threat, and that she had followed up with Winters, who also, you know, whatever Winters did, at least we know that she tried to follow up, that on those facts, taking them in the light most favorable to her, Pollack had to do something other than zero. That's correct, Your Honor. Again, in Skava, we're looking at whether the prisoner testifies that she informed an official of the identity of who threatened her, which Ms. Balcewicz did not hear. She said it was Rivers who threatened me. The nature of the threat, she said, Rivers just said, I will beat the F out of you. And of course, as you say, as you see on page 21 of the record, she used the actual excitement there. And she gave enough context to render that threat plausible through her urgent manner of speaking, through repeatedly reminding Pollack to report her safety concerns. And that case, Skava said, when an official does nothing in response to that, which is what Pollack did here, that is deliberate indifference. So that is the correct interpretation of qualified immunity. I have a little interim question, and maybe it's not fair to ask you, but Mr. Rivers was the assaulter, right? Yes, that's correct. And I was a little confused in reading through this. Was Rivers, was he, is he claiming to be something other than a, I would say, discriminated against prisoner? It sounds to me like he was trying to pretend to be sexually oriented so he could get a separate cell. Is that something you know anything about? Because I'm going to ask the other side also. Yes, Your Honor. Ms. Balcevich told Pollack that Rivers was not, was pretending to be a transgender. And the reason that is relevant here is because she told Pollack that someone who is not supposed to be showering with her, not only just threatened her, but also is not supposed to be in a space where she feels most vulnerable. Any of us feel vulnerable in the shower situation. And from that context, Pollack knew that a reasonable juror could find that Pollack knew that Ms. Balcevich felt unsafe. Okay. So because it is clearly established that the failure to do anything in response to a specific, credible, and imminent risk of harm is deliberate indifference, Pollack's summary judgment was inappropriate in this case, and Pollack is not entitled to qualified immunity. Your Honor, that's actually all I have. So if there are no further questions, I'd like to reserve the last, my last time for rebuttal. And we ask that you reverse the district court's grant of summary judgment. All right. Thank you. Thank you very much. You'll have about six minutes for rebuttal. Mr. Kowski. May it please the court, Clay Kowski appearing on behalf of the appellees, and I have two main points. First, no reasonable jury could find that what Sergeant Jonathan Pollack knew showed there was an imminent risk of serious harm that inmate Denzel Rivers posed to Balcevich. So let me ask you, Mr. Kowski, on that. She, taking the facts in the light most favorable to Ms. Balcevich, she goes to him terrified after this shower. The shower is over. And her demeanor at that time added to the fact that she also tries to get another officer to convey to the prison people in general, to Pollack, that this threat has been made, seemed to me to be evidence that a reasonable jury could regard as fear of an ongoing threat, not something that, oh, you know, I had a dangerous shower, but now it's over with, and thank goodness. Why don't you tell Rivers to behave himself? That's not the inference that I draw from these facts, or at least I think a jury could draw the inference of an ongoing thing, which actually, even in his screening order, looks like the district court initially thought, too. So, Chief Judge Wood, I want to point out that we have to consider all the context, and that includes everything that was said, because Ms. Balcevich says that she told Sergeant Pollack everything. So here's what happened there. Rivers told Balcevich to stay out of the showers between inmates Henderson and Washington. Balcevich asked why. Rivers responded by saying, don't worry about it, punk-ass hunky. I'll beat the fuck out of you. Next, another inmate who was showering, Spencer, said, why you threaten her like that? And Rivers yelled back, mind your business before you get the same treatment. And then they went about their business and ended the showers without Rivers attacking either Balcevich or Spencer. Well, that's certainly true, but, you know, I take those facts as well, but there are more facts. She reports the threat to Pollack. It's not like she thinks Rivers has just sort of a momentary burst. She speaks in a pleadingly assertive manner. She appears agitated and fearful. She follows up with Officer Winters, asks him to remind Pollack to document these concerns. Pollack doesn't do anything, and she has said nothing to indicate that it was just this period of time they were in the showers. That's the kind of thing I would assume is a defense at the merits trial, not something that is so clearly one directional that summary judgment is proper. Well, there are some things that she did not say. She didn't say, I'm afraid. She didn't say, help me. She didn't say, get Rivers away from me. She didn't say, you need to punish Rivers for this threat. She didn't say any of those things. But she speaks in a pleadingly assertive manner. She appears agitated and fearful. She follows up. I think she, you know, I don't know that there's a magic words requirement here. She conveys to Pollack that she's frightened, and she does so after the shower. She doesn't go in the middle of the shower and say, I can't complete my shower because Rivers is going to attack me if I go to the wrong stall. Right. So I think that's a good point to observe is that if she had gone to Pollack during the showers, this might be a different case. But instead, the showers continued unabated, and nothing happened. And she's still afraid. She's still afraid after the shower is over. So why does that compel the inference that the threat is limited to the shower setting? Because we believe that the proper and the only interpretation of exactly what Pollack was told is that that threat ended in the showers. It was an offhand emotional reaction by Rivers. It was not a vendetta that was being established going forward. Well, I understand. I'm not saying you couldn't draw that inference, but I don't get why that's the only inference given the timing of her complaint, given her demeanor during the complaint, and taking into account her further actions. Pollack has been alerted to the fact that a particular inmate, Rivers, is going to do a particular thing, beat the F out of her. And it's very specific, and he doesn't so much as ask a question of Rivers, like, why are you being annoying? Anything. Our position is that under those circumstances, given what had happened and when it happened and exactly what was said and what Pollack learned and what Pollack knew, that he didn't have to do anything. What else was she supposed to do besides basically plead that they look out for him? Because she feels seriously threatened. Judge Mannion, I think what I want to emphasize again is the things that are missing here that Balcevich didn't say are things like, I'm afraid, help me, get Rivers away from me, or you need to punish Rivers for this threat. Those things just were not said. And so all Pollack could believe and all he knew was that there was a tip in the showers. It ended there. And there was no attack in the showers on either Spencer or Balcevich. Keep in mind that there was a statement of threat made to Spencer as well, and nothing occurred for Spencer. So, again, all Pollack knew was that this very limited time period of the showers, again, the record is not clear how long this series of events occurred, like how many minutes or even seconds. All he knows is that these statements were made, and given the context of where they were made and that nothing happened, the only reasonable conclusion he can draw is that there is no existing threat, which is what Farmer v. Brennan requires. Was there any other encounter between her and Rivers? Judge Mannion, no, not that Pollack is aware of. There is nothing in this record saying, for example, that Rivers is a known threat, always is attacking Balcevich or anyone else. We don't know anything, and certainly Pollack doesn't know anything that's not in the record, to say that he knows that Rivers is just a menace or something like that, or that Rivers is out there targeting Balcevich. There's nothing like that in this record. Counsel, this is Judge Kainey. Your argument may be true, but it's not really very good in a summary judgment situation. You could draw, I mean, logically, as Judge Wood has indicated, inference otherwise, and this is a summary judgment. Our position is that, Judge Kainey, even in spite of this being summary judgment, given these facts, the appropriate conclusion was summary judgment to Pollack. I want to address qualified immunity briefly, and I think that the way I would like to focus on that is by pointing to the case that is quoted at pages 22 and 23 of the opening brief from the appellant. It's Reed v. Palmer, 906F3rd at 547, and it says that we would look to whether no reasonable official could have thought he was acting lawfully, as being the standard to determine whether qualified immunity would or would not apply. But that's a good standard, but, of course, qualified immunity depends, importantly, on what factual account you're relying on. So it seems to me, in this instance, if you won on summary judgment, you'd win on qualified immunity at the same time and vice versa. If there is a genuine issue of fact about the imminence of this threat, if everybody agrees it's particular, we know it's Rivers, we know it's Balshewitz, we know the rest of it. And if you accept the facts as Balshewitz says they are, then you're very comfortably in the zone of things where the Supreme Court, since Farmer v. Brennan and on, has said, violate somebody's constitutional rights, a particularized threat of violence. It's not one of those vague things that you have to worry about that do come up in cases where a reasonable officer might not realize what's going to happen. Chief Judge Wood, the question that the court would have to ask itself is, would every reasonable officer in Pollack's position have thought he was violating the Eighth Amendment by taking the actions that he did? By taking no action in the light of an imminent threat by a particular person against a particular inmate. This isn't one of those, you know, the gangster disciples, you know, control this branch of the prison, therefore I'm afraid of them. This is a very particularized scenario. Chief Judge Wood, I think that conflates two things. First of all, you're saying that the imminent standard has been met. That is not the way qualified immunity works. The way it works is that we take all the facts in the light most favorable to Ms. Balfevich. That doesn't mean that we conclude as a legal matter that it was an imminent threat. We just take all the facts in her favor and assume her facts to be true. All facts and reasonable inferences. All facts and reasonable inferences, which could include that the reason she's reporting this to Pollack is that it's not over. It's an imminent threat. Right, and our position is that assuming all the facts that she says are true, it's not an imminent threat. That's what we're saying. As a matter of law, that's true. We look at all the facts and construe them in her favor, and still we would have to look at whether any reasonable officer in Pollack's position could have thought he was violating the Eighth Amendment for the qualified immunity inquiry. We would say that qualified immunity would apply here, even assuming all the facts in Balfevich's favor. But you wouldn't say that qualified immunity would apply, would you, if she had spelled out, I think Rivers is going to attack me soon. An officer would need to look into that situation, right? I think that could be a different case. Right. Okay, well, what I'm trying to get to, though, is the reasonable inference part of the way we look at the facts on summary judgment. There are facts in this record that would yield the reasonable inference that she indicated that to him, maybe not quite in so many words, but pretty close to that. So if we're in a situation where he knows she's trying to complain that there's an imminent threat to her personal safety, then he needs to follow up somehow. He should know that. Any officer should know that. Our position is that any officer here, and a reasonable one, would have done nothing. There was nothing further to follow up on because the threat that was made in the showers ended there. And what Hollis was hearing about was, yeah, that happened in the showers. Now it's over. Well, we're certainly aware that that's your position, as you've said it three or four times. So we'll take that as your answer. I want to also address that. I just want to ask one other thing, and that is, was there anything in the past about Rivers? The way he asked seems that this is not a one-time deal. He may have had other encounters maybe that they should have been aware of. Is there anything about that in the record? No, not prior to this incident. Now, certainly there's another. If you read the district court's decision, there's another half of this case that is not on appeal, and it addresses facts that come later in time beyond the relevant time period for our case with regard to Rivers. But, Judge Mannion, the key is to look at what did Pollack know on May 5, 2017, about Rivers? And there's nothing in the record to suggest that Pollack had any reason to believe that Rivers was some threat to Balsavage. Also, Judge Mannion, I want to answer your question about the issue of Rivers' transgender identity. So I don't see the appellant here to be saying that Rivers is a faker, because in their reply brief they expressly in a footnote say that that is not what they're saying. We have to take at face value here that the prison has to respect what Rivers is identifying as, and Rivers is identifying as transgender. That is why Rivers is showering with this group of inmates. So I don't think it's a good path to go down, or even what the appellant asked me to do, to be questioning Rivers' transgender identity. That also leads me to my second point, which is going to be that the fact that we have a transgender plaintiff here really is a relevant fact, but it does not change the analysis for this court. Rivers wasn't threatening Balsavage because she was transgender. Rivers was making a passing threat in the showers because she didn't want Balsavage showering between two other inmates. The threat itself had nothing to do with Balsavage's transgender identity. And so the idea that transgender identity might affect the outcome here is really a red herring, and we believe that it really doesn't change the analysis in this particular case, and it would be a mistake to emphasize that. All right. I think you're about out of time, so if you have a final sentence, that's fine. We would ask that this court affirm the district court's judgment. Thank you, Your Honors. All right. Thank you very much. Anything further, Ms. Lobacheva? Yes, Your Honor. Just two or three quick points on rebuttal. You're correct, Judge Wood, that there are no magic words that a prisoner needs to say to lead a reasonable juror to believe that the threat was imminent here. Ms. Balsavage did not need to say, I'm afraid, or help me, or get Rivers away from me, for a reasonable juror to conclude Pollack knew about an imminent threat. That's one possibility of how Pollack interpreted events, but that is not the only reasonable interpretation. A reasonable juror could find that Pollack knew the threat was imminent from Rivers' expression of violence. Balsavage's immediate report, her visible fear, her repeated requests for Pollack to report her safety concerns, her following up with another officer to do so, and from the lack of any testimony from Pollack that he thought the threat was still. Again, he has not submitted anything to show that he thought that this threat would be impossible to complete. He hasn't submitted anything at all to that point. To the point about qualified immunity, I also agree with you, Judge Wood, that qualified immunity is only appropriate when the law as applied to the fact is uncertain. And that is a quote from this court in Horshavi Casper. And the uncertainties in this case, whether Pollack knew of a threat, whether he knew the threat was imminent, are based on reasonable inferences in Balsavage's favor or are factual. So if we take the facts in the light most favorable to Balsavage, any reasonable officer, any prison official who would know that if he failed to do anything at all in response to a specific, credible and imminent risk of harm, as we have here, is liable for deliberate indifference. And there was a question about evidence of any prior incidents between Rivers and Balsavage that Pollack knew about. Although there is no direct evidence of a prior incident between them, the record does show that Balsavage did complain to Pollack about non-transgender prisoners showering with her prior to this incident and that Rivers was showering with Balsavage prior to the threat. So a reasonable juror could connect the dots and infer that Balsavage complained about Rivers before. And regardless, Farmer tells us that the Eighth Amendment does not impose a requirement of advanced notification of a substantial risk of assault posed by a particular fellow prisoner. So from this case, we have to remember that Balsavage's burden is simply to show a reasonable juror could find that Pollack knew of a risk of harm here, and a reasonable juror could certainly come to that conclusion, not only from the fact that Balsavage just told Pollack that a prisoner told her, I will beat the F out of you, but the urgency with which she related and her heightened risk of harm as a woman who is transgender. So for these reasons, we ask that you reverse the district court's grant of summary judgment. Thank you. All right. Thank you very much to both counsel. This court will take the case under advisement.